UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GALAXY AMERICA, INC.,

      Plaintiff,

v.                    Case No: 2:19-cv-855-JES-MRM

EZ INFLATABLES, INC., AND
EDGAR ABRAAMYAN,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on defendants' Dispositive Motion to Dismiss Counts VI, VII, and VIII Against Defendants For Failure To State A Claim and To Dismiss All Claims Against Edgar Abraamyan For Lack of Personal Jurisdiction (Doc. #49) filed on June 11, 2020. Plaintiff filed a corrected Response in Opposition (Doc. #57) on July 14, 2020. For the reasons set forth below, the motion is denied.

### I.

The eight-count First Amended Complaint (FAC) alleges that plaintiff Galaxy America, Inc. (Galaxy or plaintiff) is a renowned company in the attractions and amusements industry, manufacturing some of the most innovative and high-quality inflatable designs that are sold in the United States marketplace, as well as in over 45 other countries. (Doc. #47, ¶¶ 3, 43.) Galaxy's designs include commercial-grade inflatable games, obstacle courses, slides,

jumpers, water slides, climbing walls, and mechanical and interactive amusements, some of which are marketed using Galaxy's TOXIC® trademark and/or Galaxy's trade dress. (Id. at ¶¶ 5, 57.) The FAC further alleges that Defendants coveted Galaxy's lucrative customer base and success in the marketplace, and as a result, unlawfully created "knock-off's" of Galaxy's products and trade dress in an effort to lure its customers away from Galaxy. (Id. at ¶ 16.) The FAC asserts that Defendants intentionally copied, without Galaxy's consent, its TOXIC® products that are federally registered, its trade dress, and its common law marks, and then sold infringing products. (Id.) Additionally, the FAC alleges that defendant Edgar Abraamyan (Abraamyan) engaged in unlawful activity against Galaxy due to his ownership of EZ Inflatables and his direction, control, and personal participation in the infringing activities of his alter ego EZ Inflatables, Inc. (EZ Inflatables). (Doc. #47, ¶¶ 211, 216.)

Defendant EZ Inflatables only challenges three counts of the FAC, alleging that each fails to state a claim: trade dress infringement under § 1125(a) (Count VI); Florida common law trade dress infringement (Count VII); and contributory and vicarious unfair competition pursuant to § 1125(a) (Count VIII). (Doc. #47; Doc. #49, pp. 1, 4-15.) Defendant Abraamyan seeks dismissal of all counts against him based on a lack of personal jurisdiction. (Doc. #49, pp. 16-20.)

## II.

"A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583–585, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)." Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 562 (2017). While subject-matter jurisdiction is not disputed in this case, defendant Abraamyan asserts that the Court lacks personal jurisdiction over him, and therefore the FAC must be dismissed in its entirety as to him. (Doc. #49, pp. 16-20.)

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014). The Supreme Court has recognized two kinds of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." Ford Motor Co. v. Montana Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1024 (2021) (citation omitted.) The Supreme Court has summarized the differences:

> A state court may exercise general jurisdiction only when a defendant is essentially at home in the State. General jurisdiction, as its name implies, extends to any and all claims brought against a defendant. Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world. But that breadth imposes a correlative limit: Only a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction. In what we have called the "paradigm"

case, an individual is subject to general jurisdiction in her place of domicile.

. . .

Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." They must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff 's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"

Ford Motor Co., 141 S. Ct. at 1024–25 (internal citations and some punctuation omitted.)  Florida's long-arm statute provides for both specific and general personal jurisdiction. Fla. Stat. §§ 48.193(1)-(2); Madara v. Hall, 916 F.2d 1510, 1516 n.7 (11th Cir. 1996).

Procedurally, plaintiff is required to allege sufficient facts in the complaint to make out a *prima facie* case of personal jurisdiction. Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1350 (11th Cir. 2013)) (citation omitted).  A defendant may move to dismiss a claim by asserting the lack of personal

jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant challenges personal jurisdiction by submitting affidavits or other competent evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction. Posner v. Essex Ins. Co., 178 F.3d 1209, 1214-15 (11th Cir. 1999)(when "the burden shifts back to the plaintiff, this time requiring plaintiff to prove — not merely allege — jurisdiction by affidavits, testimony, or other documents.").

Here, the FAC alleges the Court has personal jurisdiction over each defendant. (Doc. #47, ¶ 36.) The FAC alleges that Abraayman is a resident of California over whom the Court may exercise personal jurisdiction pursuant to the general and specific jurisdiction provisions of Fla. Stat. § 48.193(1) & (2). (Doc. #47, ¶ 36.) The FAC continues:

> Defendants have intentionally and voluntarily conducted business in the State of Florida on a continuous, systematic and substantial basis from at least 2013 to 2019, having also sold infringing products to Galaxy's existing customers and potential customers within the State of Florida during this period. From at least 2011—2019, Defendants have consistently, continuously, and systematically conducted business in the State of Florida, made substantial sales to, and purchases from, Florida residents, consumers, and companies, including Plaintiff. Defendant Abraamyan has personally participated in such activities within and aimed at Florida residents and consumers.

(Doc. #47, ¶ 89.) The FAC asserts that the Court has personal jurisdiction over defendant Abraamyan because "EZ inflatables is the alter ego of Abraamyan and the instrument through which

Abraamyan has committed and continues to commit unlawful, tortious acts of . . . trade dress infringement . . ., including continuous and systematic marketing, offers for sale and sales of products, including products, within and to Florida from 2013 to 2019." (Id. at ¶¶ 92, 89, 104, 155, 160.) Plaintiff alleges that defendant Abraamyan is directing and controlling activities of trade dress infringement and unfair competition committed by and through his alter ego, EZ Inflatables, in Florida, from which Abraamyan derives personal benefit including financial gain, and personally participates in the unlawful activities. (Id. at ¶¶ 37, 83.) The FAC also alleges that Abraamyan, as the sole owner of EZ Inflatables (his alter ego), has actively participated in, directed, controlled, and supervised the planning, marketing and sales of EZ Inflatables in the State of Florida, which includes attending trade shows such as the IAAPA Expo in Orlando, Florida from 2013 to 2019, advertising, marketing and selling of goods on EZ Inflatable's website and on social media websites, transporting and delivering company products while in the State of Florida, and selling infringing products to multiple Florida companies. (Id. at ¶¶ 37, 83, 93, 95, 211.) In doing these activities, Plaintiff asserts that Defendants, including Abraamyan, have intentionally targeted consumers in the State of Florida. (Id. at ¶ 83.)

Defendant Abraamyan has filed a declaration in opposition to personal jurisdiction. (Doc. #49-1.) In his declaration, Abraamyan

maintains that (1) he does not and has never resided in Florida;
(2) he does not own any property in Florida; (3) he does not own,
use, possess, or hold a mortgage, lien, or any real property in
Florida; (4) he does not have any bank accounts in Florida; (5)
neither he nor EZ Inflatables have any contracts requiring
performance in Florida; (6) he does not travel to Florida for
personal reasons, and that when he did travel to Florida, it was
for business related to EZ Inflatables; (7) neither he nor EZ
Inflatables maintain any licenses to conduct business in Florida,
and do not have offices, facilities, agent, employees, materials,
or products located within the State; and (8) neither he nor EZ
Inflatables have ever targeted Galaxy's business in Florida. (Id.
at ¶¶ 3-4, 6-7, 10, 12, 16-17, 26.) Finally, Abraamyan asserts
that even though he has attended the IAAPA Expo on behalf of EZ
Inflatables, the Expo is not directed at Florida or any of its
residents because it is a global trade show. (Id. at ¶ 27.)
Abraamyan argues that Plaintiff has not met the high threshold of
showing he is subject to general jurisdiction in a Florida court.
(Doc. #49, p. 19.) See Helicopteros Nacionales de Colombia, S.A.
v. Hall, 466 U.S. 408, 414 (1984)("It is clear that a very high
threshold must be met in order for general jurisdiction to be
exercised over a nonresident defendant in Florida.").

In response, Plaintiff points to Defendants' Amended Responses to Plaintiff's Request For Admissions, in which Defendants admit that they sold products to purchasers or took purchase orders during the IAAPA Expo in Florida, at least once between 2013 and 2019, and that EZ Inflatables sold at least five products per year into Florida for at least three of the past five years. (Doc. #57-8, pp. 6-7, 52.) Plaintiff also relies upon Robin Whincup's[1] declaration, which asserts that Abraamyan is the moving force behind EZ Inflatables and that Whincup has personal knowledge that Defendants have purchased and sold products to Florida consumers, including Galaxy and Galaxy's customers, each year from at least 2013-2017. (Doc. #57-4, ¶ 13.) Attached to Whincup's declaration is a spreadsheet dated January 21, 2020, that Whincup avers is evidence of systematic and continuous sales by and between Defendants and Galaxy, and Florida.[2] (Id. at ¶ 14; Doc. #57-5, pp. 3-7.) In addition, Plaintiff provides copies of three websites of Florida companies that sell Defendants' infringing products, along with Twitter posts that show promotion

---

[1] Robin Whincup is the President and founder of Galaxy, which is headquartered in Port Charlotte, Florida. (Doc. #47, ¶¶ 2-4, 32; Doc. #57-4, p. 2.)

[2] The sales in the spreadsheet purportedly occurred from 2011 through 2017. (Doc. #57-5, pp. 3-7.)

of Defendants' products, including a promotion in Fort Myers, Florida. (Doc. #57-6, pp. 2-15, 19-20, 22, 28, 33, 35-57.)

### A. General Personal Jurisdiction

A Florida court exercises general personal jurisdiction over nonresident defendant who is "engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, [and] whether or not the claim arises from that activity." Fla. Stat. § 48.193(2); Fraser v. Smith, 594 F.3d 842, 849 (11th Cir. 2010). "In order to establish that [defendant] was engaged in substantial and not isolated activity in Florida, the activities of [defendant] must be considered collectively and show a general course of business activity in the State for pecuniary benefit." Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1361 (11th Cir. 2006). Section 48.193(2)'s "substantial and not isolated activity" requirement is "the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment" to the United States Constitution. Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). Thus, "[t]he reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." Fraser, 594 F.3d at 846.

Plaintiff relies heavily on the alter-ego theory in an effort to establish personal jurisdiction.  Under Florida law, to pierce the corporate veil under an alter-ego theory, a plaintiff must allege: "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and, (3) the  fraudulent or improper use of the corporate form caused injury to the claimant." Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1349 (11th Cir. 2011).  See also WH Smith, PLC v. Benages & Assocs., Inc., 51 So.3d 577, 581 (Fla. Dist. Ct. App. 2010). The FAC does not allege that the corporate form was used for an improper purpose or that the improper use of the corporate form caused injury to Plaintiff.  The Court finds that Plaintiff has not plausibly alleged facts to support its alter-ego theory which would suffice to pierce the corporate veil. Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum, 749 F. App'x 765, 773 (11th Cir. 2018) (denying a veil-piercing claim where it was not shown that the corporation was organized for a fraudulent or illegal purpose or that the corporate form was itself misused.)

The Court finds that general jurisdiction is not otherwise established over defendant Abraamyan.  The paradigm forum for Abraamyan is California, his state of domicile. Ford Motor Co.,

141 S. Ct. at 1025. Galaxy's spreadsheet of purported sales between Galaxy and Defendants from 2011 through 2017 shows there were numerous sales, but not to the extent that they were "continuous and systematic." See Croft, 2010 U.S. Dist. LEXIS 40592, at *8 (where the defendant derived sales and profits from Florida residents on at least thirty-nine occasions over a three year span, with at least 6% of worldwide sales going to Florida residents, the court held it was a classic case of "sporadic and insubstantial contacts" insufficient for general jurisdiction). Likewise, evidence of Defendants' website, Twitter feed, or three companies in Florida that sell Defendants' infringing products is insufficient to show that Abraamyan has engaged in a general course of business activity in the State for pecuniary benefit. See, e.g., Trustees of Columbia Univ. In City of New York v. Ocean World, S.A., 12 So. 3d 788, 795 (Fla. 4th DCA 2009) ("The mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible.") "To hold otherwise would "render any individual or entity that created . . . a website subject to personal jurisdiction' for virtually any matter." Regent Grand Mgmt., Ltd. v. Tr. Hosp'y LLC, No. 18-21445-Civ, 2019 U.S. Dist. LEXIS 4829, at *17 (S.D. Fla. Jan. 9, 2019). Finally, Abraamyan's attendance at trade shows in Florida and marketing the alleged infringing products is insufficient to warrant the exercise of general

jurisdiction over Abraamyan. <u>See</u> <u>Schulman v. Inst. for Shipboard</u> <u>Educ.</u>, 624 F. App'x 1002, 1005 (11th Cir. 2015) (citing <u>Goodyear</u> <u>Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011))(finding that marketing efforts and attendance at a Florida trade show, even when coupled with sales to Florida dealers, do not render the defendant "essentially at home.").

Considering the totality of all these activities and drawing all reasonable inferences in favor of Galaxy, the Court finds that Abraamyan's contacts with Florida are insufficient to confer general personal jurisdiction under the Florida long-arm statute's general jurisdiction provision.

### B. Specific Personal Jurisdiction

Specific jurisdiction authorizes a Court to exercise jurisdiction over a nonresident defendant when the cause of action arises from or relates to the defendant's actions within a state. Fla. Stat. § 48.193(1); <u>Louis Vuitton</u>, 736 F.3d at 1352. Florida Statute § 48.193(1)(a)(2) permits jurisdiction over a nonresident defendant who commits a tort outside of the state that causes injury inside the state of Florida. <u>Licciardello v. Lovelady</u>, 544 F.3d 1280, 1283 (11th Cir. 2008). This provision does not require a tortfeasor's "physical presence in Florida is not required to obtain personal jurisdiction". <u>Binder v. Aeschlimann</u>, No. 17-80290-CIV, 2019 U.S. Dist. LEXIS 51869, at *13 (S.D. Fla. Mar. 25, 2019); <u>Internet Sols. Corp. v. Marshall</u>, 557 F.3d 1293, 1296 (11th

Cir. 2009). "It is well settled in the Eleventh Circuit that trademark claims under the Lanham Act allege tortious acts for long-arm purposes[.]" PG Creative Inc. v. Affirm Agency, LLC, No. 18-cv-24299, 2019 U.S. Dist. LEXIS 189001, 2019 WL 5684219, at *4 (S.D. Fla. Oct. 31, 2019); see also Hard Candy, LLC v. Hard Candy Fitness, LLC, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015) (recognizing trademark infringement under 15 U.S.C. § 1125(a), and common law unfair competition involve "tortious acts" under the long-arm statute).

Abraamyan argues he has not engaged in tortious conduct expressly aimed at Galaxy in Florida. But even if Abraamyan had done so, Defendants assert that his role as a corporate representative with EZ Inflatables does not subject him to specific personal jurisdiction. (Doc. #49, pp. 16-18; Doc. #49-1, pp. 2-5.) The crux of Defendants' argument is that Abraamyan is protected under the corporate shield doctrine. As this court has previously explained,

> [i]n Florida, the corporate shield doctrine, also known as the "fiduciary shield" doctrine, provides that "acts performed by a person exclusively in his corporate capacity not in Florida but in a foreign state may not form the predicate for the exercise of personal jurisdiction over the employee in the forum state." Kitroser v. Hurt, 85 So. 3d 1084, 1088 (Fla. 2012). The rationale behind the doctrine is that it "may be unfair to force an individual to defend an action filed against him personally in a forum with which his only relevant contacts are acts performed totally outside the forum state and not for his own benefit but for the exclusive benefit of his employer." Id. However, the defendants'

argument is misplaced, as the doctrine does not apply to intentional torts. See Mosseri, 736 F.3d at 1355 ("[U]nder Florida law, this corporate shield doctrine is inapplicable where the corporate officer commits intentional torts."); Black v. Bryant, 905 F. Supp. 1046, 1052 (M.D. Fla. 1995) (noting that in accordance with Florida's long-arm statute, "a non-resident corporate officer may be haled into court in Florida if it is alleged that he personally committed an intentional tort expressly aimed at the plaintiff in the forum state.").

Skypoint Advisors, LLC v. 3 Amigos Prods. LLC, No. 2:18-cv-356-FtM-29MRM, 2019 U.S. Dist. LEXIS 124134, at *23-24 (M.D. Fla. July 25, 2019). Since the FAC alleges that defendant Abraamyan actively and knowingly engaged in an intentional tortious act of trade dress infringement in Florida (Doc. #47, ¶¶ 87-90, 93, 155-56, 212), the corporate shield doctrine is not applicable. Plaintiff has plausibly pled sufficient facts to demonstrate the Court has specific personal jurisdiction over Abraamyan.

### C. Constitutional Due Process

The remaining question is whether exercising jurisdiction over Abraamyan comports with the Due Process Clause of the Fourteenth Amendment. To determine whether exercising specific jurisdiction comports with due process, courts employ a three-part test, which examines:

(1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports

with "traditional notions of fair play and substantial justice."

<u>Louis Vuitton</u>, 736 F.3d at 1355.

With respect to the first prong, Defendants argue that Abraamyan's contacts with Florida are not the "but-for cause" of Plaintiff's injuries, and that any alleged acts substantially occurred in California. (Doc. #49, p. 20.) A "tort 'arises out of or relates to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." <u>Waite v. All Acquisition Corp.</u>, 901 F.3d 1307, 1314 (11th Cir. 2018). The FAC alleges defendants EZ Inflatables and Abraamyan have each committed unlawful, tortious acts of trade dress infringement, and have marketed, advertised, and sold infringing products in the State of Florida, which has caused harm to Galaxy and consumers within Florida. (Doc. #47, ¶¶ 37, 41-42, 92.) The Court finds Abraamyan's alleged activities in Florida are the but-for cause of Plaintiff's alleged injuries and claims, satisfying the first prong.

Turning to the second prong, the FAC alleges that EZ Inflatables and Abraamyan have intentionally targeted customers in Florida through their website, social media, direct marketing, and regular attendance at trade shows, and have marketed and sold products in the State of Florida through these channels. (Doc. #47, ¶¶ 82-83, 89.) Defendants argue that website sales are "too

narrow a thread" on which to find meaningful contact (Doc. #49, p. 20), but the Court is not persuaded. See, e.g., GLD, LLC v. Gold Presidents, LLC, No. 20-21617-CIV-MORE, 2021 U.S. Dist. LEXIS 8158, at *9 (S.D. Fla. Jan. 15, 2021) (finding purposeful availment existed where the defendant created a website to sell watches that infringed upon the plaintiff's trade dress, which was accessible in Florida, even though no sales were completed); EasyGroup Ltd. v. Skyscanner, Inc., No. 20-20062-CIV, 2020 U.S. Dist. LEXIS 166425, at *29-30 (S.D. Fla. Sept. 11, 2020) ("Easyfly purposefully availed itself of the privileges of conducting business in Florida. Easyfly clearly does business over the Internet in the United States and Florida; is willing to (and does) directly sell its services to Florida customers; has not limited its sales to any region or area; and accepts payment from Florida customers."); Rice v. PetEdge, Inc., 975 F. Supp. 2d 1364, 1371 (N.D. Ga. 2013) (where the defendant sold trademarked products online into the forum state and it was defendant's only contact, the court found "[d]efendant's creation of a website that allows Georgia customers to directly purchase its products constitutes purposeful availment, as defendant financially benefits from doing business in Georgia.") The Court finds Abraamyan purposefully availed himself of the privilege of conducting activities within Florida, satisfying the second prong. Louis Vuitton, 736 F.3d at 1355.

As for the third and final prong, Defendants argue that given Abraamyan's non-existent contacts with Florida outside of his role with EZ Inflatables, fair play and substantial justice merit dismissal of all claims against him. (Doc. #49, p. 20.) The "fair play and substantial justice factor is to be applied sparingly." EasyGroup Ltd., 2020 U.S. Dist. LEXIS 166425, at *33. This inquiry considers five "fairness factors" to determine whether exercising jurisdiction over a defendant is reasonable: (1) the burden on the defendant of litigating in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) states' shared interest in furthering fundamental social policies. Meier ex rel., 288 F.3d at 1276.

Upon careful consideration of each factor, the Court finds Defendants have not "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985). Litigating this case in Florida would not be unfair in light of modern methods of transportation and communication, Maurer Rides USA, Inc. v. Beijing Shibaolai Amusement Equip. Co., Ltd., No. 6:10-cv-1718, 2014 U.S. Dist. LEXIS 100989, 2014 WL 3687098, at *5 (M.D. Fla. July 24, 2014), and his routine travel

to Florida. Furthermore, "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." Licciardello, 544 F.3d at 1288. The FAC has sufficiently alleged that Plaintiff has been injured by the intentional misconduct of Abraamyan, which was expressly aimed at a Florida corporation. Galaxy should not have to travel to California to seek redress from persons who knowingly caused injury in Florida. See id. (noting that "[t]he Supreme Court concluded that '[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.'"). Finally, Galaxy "has a strong interest in obtaining convenient and effective relief in order to protect its company's reputation, resolve any consumer confusion, and maintain the value of its trademark[s]." Spectrum Image, Inc. v. Makozy, No. 19-21702-Civ, 2019 U.S. Dist. LEXIS 143346, 2019 WL 3997164, at *3 (S.D. Fla. Aug. 23, 2019) (alteration added; citation omitted). The Court finds this is not "one of those rare cases in which minimum requirements inherent in the concept of fair play and substantial justice defeat the reasonableness of jurisdiction." U.S. S.E.C. v. Carrillo, 115 F.3d 1540, 1547 (11th Cir. 1997) (quotation marks omitted).

Plaintiff has satisfied the specific personal jurisdiction portion of Florida's long-arm statute, and exercising specific

personal jurisdiction over defendant Abraamyan does not offend due process. Accordingly, Defendant's motion to dismiss all claims against Abraamyan for lack of personal jurisdiction is denied.

### III.

Defendant EZ Inflatable argues that Count VI through Count VIII of the FAC should be dismissed for failure to state a claim. (Doc. #49, pp. 1-15.)  For the reasons set forth below, that portion of the motion is denied.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. See also Phx. Entm't Partners, LLC v. Casey Rd. Food & Bev., LLC, 728 F. App'x 910, 912 (11th Cir. 2018).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take

them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzaín, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### A. Counts VI and Count VII

The FAC alleges claims of trade dress infringement under §43(a) of the Lanham Act (Count VI) and under Florida common law (Count VII). (Doc. #47, pp. 55-59.) "The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish between competing producers." Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 198 (1985). See also Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.,

872 F.3d 1256, 1260 (11th Cir. 2017). Section 43(a) of the Lanham Act creates a federal cause of action commonly referred to as trade dress infringement.  FIU Bd. of Trs. v. Fla. Nat'l Univ., Inc., 830 F.3d 1242, 1265 (11th Cir. 2016).  Section 43(a) states:

> (1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(1)(A).  Trade dress constitutes a "symbol" or "device" by which the goods of the applicant may be distinguished from the goods of others.  Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 210-11 (2000).  Trade dress is defined as "the total image of a product," which "may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques."  Yellowfin Yachts, Inc. v. Barker Boatworks, LLC, 898 F.3d 1279, 1288 (11th Cir. 2018) (quoting John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 980 (11th Cir. 1983)).  A typical trade dress action involves "a good's

packaging or labeling, but the design of a product, or a feature of a product, may also constitute protectable trade dress." Yellowfin Yachts, Inc., 898 F.3d at 1288.

A plaintiff must allege and ultimately prove three elements to prevail on a trade dress claim under the Act: "1) its trade dress is inherently distinctive or has acquired secondary meaning, 2) its trade dress is primarily non-functional, and 3) the defendant's trade dress is confusingly similar." Id. "As all three elements are necessary for a finding of trade dress infringement, any one could be characterized as threshold." Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1202 (11th Cir. 2004).

"Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims [of infringement]." Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1345 (11th Cir. 2012). Thus, the standard for Plaintiff's state law trade dress infringement claim is the same as under the Lanham Act. See ZP NO. 314, LLC v. ILM Cap., LLC, No. 16-00521-B, 2019 U.S. Dist. LEXIS 170244, at *26 (S.D. Ala. Sep. 30, 2019). The Court will therefore consider together whether Plaintiff has stated a plausible federal and Florida common law claim for trade dress infringement.

Defendants assert that Plaintiff's trade dress counts fail for four reasons. The Court will address each reason in turn.

### (1) Failure to Allege Features Constituting Trade Dress

Defendants argue that Plaintiff has failed to state a plausible trade dress claim because the FAC does not allege "a sufficient description of what the trade dress consists of and on what line of goods the amorphous Trade Dress is meant to serve as a source indicator." (Doc. #49, pp. 5-6.)

To describe the allegedly infringed trade dress, the FAC provides the following image:



(Doc. #47, ¶ 8.) The FAC asserts that its trade dress designs consist of

> a well-defined black and yellow repeating pattern on the upper baffles bordering the profiles and upper outline of its product designs, including upon the upper sections of the sidewalls, lower walls, slide walls and arches creating an overall visual connection and relationship between the curves, tapers, and lines of the products.

(Id. at ¶ 10.) In addition to its yellow and black trade dress, the FAC alleges that it has a multi-colored trade dress design

that includes specific configuration and use of color combinations
including:

> yellow, black, green, and gray additional features of
> its products in connection with the "floor panels (which
> are typically primarily green), inner and out sidewall
> baffles (which are typically alternating solid bands of
> yellow, grey and/or black baffles typically configured
> below the repeating pattern of back and yellow stripes),
> obstacles, side walls and bordering in combination and
> in relation to the yellow and black repeating pattern of
> stripes which appear on the upper border baffles and
> cylindrical elements . . .

(Id. at ¶ 11.)  The FAC associates the trade dress design with the

products Plaintiff manufactures, markets, offers for sale, and

sells such as fitness equipment, inflatables, obstacle courses,

amusement park rides, and carnival rides. (Id. at ¶ 12.) The FAC

also provides several pictures that depict Galaxy's alleged trade

dress. See (Id., pp. 17-21 (Figures 1-6, 9.))

"A plaintiff must describe with words the distinctive feature

of trade dress, and a plaintiff who seeks protection for a line of

products 'faces the particularly difficult challenge of showing

that the appearance of its several products is sufficiently

distinct and unique to merit protection as a recognizable trade

dress.'" Yellowfin Yachts, Inc. v. Barker Boatworks, LLC, 237 F.

Supp. 3d 1230, 1235 (M.D. Fla. 2017). "A plaintiff's inability to

identify and describe a distinctive, aesthetic feature exposes a

trade-dress claim too vague to succeed." Id.; see, e.g., Yellowfin

Yachts, Inc. v. Barker Boatworks, LLC, No. 8:15-cv-990-T-23TGW,

2015 U.S. Dist. LEXIS 149754, at *5 (M.D. Fla. Nov. 4, 2015) (citing to cases in finding that plaintiff's pictures and diagrams in the complaint were sufficient to describe the alleged trade dress in defeating a motion to dismiss); Someecards v. SnarkeCards, LLC, 2014 U.S. Dist. LEXIS 108264, 2014 WL 3866024, at *2 (W.D.N.C. Aug. 6, 2014)("At the pleadings stage, pictures of trade dress alone may provide the necessary description of trade dress."); Weber-Stephen Prods. LLC v. Sears Holding Corp., 2013 U.S. Dist. LEXIS 153806, 2013 WL 5782433, at *4 (N.D. Ill. Oct. 25, 2013)(holding that "photographs and . . . figures" satisfied the pleading requirements even though the complaint failed to "clarify exactly what it mean[t] by 'shroud riveted band design.'").

At this stage of the proceedings, the Court finds that the allegations in the FAC regarding infringement of Plaintiff's trade dress are sufficient to identify a protectable interest. See Hako-Med USA, Inc. v. Axiom Worldwide, Inc., No. 8:06-CV-1790-T-27EAJ, 2006 U.S. Dist. LEXIS 94240, 2006 WL 3755331, at *11 (M.D. Fla. Nov. 15, 2006) ("Under . . . the Lanham Act . . . 'the design of a product itself may constitute protectable trade dress.'" (quoting John H. Harland Co., 711 F.2d at 980). The FAC, including the pictures of the alleged trade dress, sufficiently identifies and describes distinctive, aesthetic features of Galaxy's trade dress, such that Plaintiff's "trade-dress claim [is not] too vague to succeed." Yellowfin Yachts, Inc., 237 F. Supp. 3d at 1235.

### (2) Distinctiveness of Galaxy's Trade Dress

Defendants also argue that the FAC fails to state a claim for trade dress infringement because it makes only conclusory allegations that its trade dress is inherently distinct and Plaintiff cannot show the trade dress has acquired secondary meaning. (Doc. #49, pp. 7-11.) "A trade dress is distinctive and capable of being protected if it is either (1) inherently distinctive or (2) has acquired distinctiveness through secondary meaning." Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc., No. 8:18-cv-2147-T-33SPF, 2019 U.S. Dist. LEXIS 89803, at *10 (M.D. Fla. Jan. 11, 2019) (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992) (citation omitted)). For the reasons set forth below, this portion of the motion is denied.

### (a) Inherently Distinctive Trade Dress

A trade dress is inherently distinctive when its "intrinsic nature serves to identify a particular source of a product." Vital Pharm., Inc., 472 F. Supp. 3d at 1250; Tempur-Pedic N. Am., LLC, 2019 U.S. Dist. LEXIS 89803, at *10. "The ultimate question in determining whether a product's trade dress is distinctive is not whether 'each element or part' of the dress is distinctive, but rather whether the combination of elements, taken 'as a whole,' conveys a unique impression." Vital Pharm., Inc., 472 F. Supp. 3d at 1251.

The FAC alleges that Galaxy chose to adopt and utilize a specific trade dress which is "inherently distinctive in the attractions and amusement industry." (Doc. #47, ¶ 45.) The FAC alleges that Plaintiff's trade dress is applied to its products in a manner "which wraps certain elements, including baffles, cylindrical elements, borders, and booms . . . in a manner akin to product packaging, creating a striking, vivid, recognizable and consistent overall source identifying, commercial impression of its products." (Id. at ¶ 51.) The FAC also alleges that "the placement, stylization, design, combination, configuration, and specific use of a unique color scheme [well-defined yellow and black repeating pattern of stripes, and green and gray] as part of Galaxy's trade dress creates a unique overall commercial impression in the minds of consumers which serves to identify Galaxy as the source origin of its products and to set Galaxy's products apart from others in the attractions and amusement marketplace." (Id. at ¶¶ 10, 46, pp. 17-21 (Figures 1-4, 7, 9,11.)) The FAC asserts that Galaxy's trade dress is entitled to protection under the Act because it is "distinctive, non-functional, and has acquired secondary meaning." (Id. at ¶¶ 10, 191.)

Defendants argue that the Court should ignore Plaintiff's mischaracterization that its trade dress is akin to "product packaging" since Plaintiff is only making this allegation because the product design cannot be inherently distinctive. (Doc. #49, p.

8.)  In ruling on a motion to dismiss, the Court must accept all factual allegations in the FAC as true and take them in the light most favorable to Plaintiff.  Erickson, 551 U.S. at 93-94. The FAC has clearly alleged that Plaintiff's trade dress is applied to its products in a manner akin to product packaging.  While defendants may disagree that such allegations are accurate, that dispute is for another day.

Defendants also argue that irrespective of product packaging, no color mark can ever be inherently distinctive. (Doc. #49, p. 9.) The Court disagrees. The Supreme Court has made clear that inherent distinctiveness turns on whether consumers would be predisposed to "equate the [color] feature with the source." Wal-Mart Stores, 529 U.S. at 211. While it is true that "color is usually perceived as ornamentation," In re Owens-Corning Fiberglas Corp., 774 F.2d 1116, 1124 (Fed. Cir. 1985), "a distinct color-based product packaging mark can indicate the source of the goods to a consumer, and, therefore, can be inherently distinctive." In re Forney Indus., 955 F.3d 940, 945 (Fed. Cir. 2020)(holding that the "use of color in product packaging can be inherently distinctive . . . only if specific colors are used in combination with a well-defined shape, pattern, or other distinctive design.").

Plaintiff has sufficiently alleged it employs  unique, well-defined overall color scheme which makes up Galaxy's trade dress

and serves to identify Galaxy as the source origin of its products to consumers and to set Galaxy's products apart from others in the attractions and amusement marketplace. See Wal-Mart Stores, 529 U.S. at 211. The Court finds the FAC adequately and plausibly alleges that Galaxy's trade dress is inherently distinctive.

### (b) Acquired Secondary Meaning

Defendants also argue that the FAC does not sufficiently allege that Galaxy's trade dress has acquired secondary meaning and fails to allege that its trade dress acquired secondary meaning prior to Defendants' use of Galaxy's trade dress. (Doc. #49, pp. 10-11.) The Court finds the FAC sufficient as to its allegations concerning acquired secondary meaning.

Secondary meaning "occurs when, in the minds of the public, the primary significance of [the] trade dress is to identify the source of the product rather than the product itself.'" Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1322 (11th Cir. 2012) (quoting Wal-Mart Stores, 529 U.S. at 211). Relevant factors in determining whether a trade dress has acquired secondary meaning are:

> (1) The length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the trade dress and the plaintiff's business; and (4) the extent to which the public actually identifies the trade dress with the plaintiff's products.

GLD, LLC, 2021 U.S. Dist. LEXIS 8158, at *21; Tropic Ocean Airways,

Inc. v. Floyd, 598 F. App'x 608, 612 (11th Cir. 2014).

With respect to secondary meaning, the FAC alleges that:

12. Galaxy has consistently and continuously used its marketing to promote a conscious connection in the minds of consumers between the Galaxy Trade Dress and Galaxy as the sole source of origin of products bearing such trade dress.

15. Galaxy has also continuously and extensively utilized its trade dress since at least 2013 in its marketing materials including its catalogs, brochures, flyers, social medial campaigns, company websites, displays, exhibits and other advertising. As a result, consumers in the attractions and amusement market have come to identify Galaxy's trade dress as a sign of the high-quality and distinctive products produced and sold by Galaxy. Indeed, through Galaxy's extensive and continuous use in commerce, the Galaxy Trade Dress designs have become well-known indicators of the origin and quality of Galaxy's Trade Dress Products, acquiring substantial secondary meaning in the attractions and amusements marketplace, including within Florida.

48. Galaxy's extensive worldwide marketing efforts in connection with its unique trade dress have resulted in consumers identifying its trade dress with Galaxy as the source of products bearing the unique and specific color combinations, shapes, pattern, placements and design comprising the Galaxy Trade Dress.

192. Galaxy has extensively and continuously promoted and used its trade dress in interstate commerce within the United States since at least 2013 . . . The Galaxy Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Galaxy commenced use of its trade dress long before Defendants' unlawful use of Galaxy's trade dress in connection with the infringing products.

(Doc. #47, ¶¶ 12, 15, 48, 192.)

Accepting these allegations as true and viewing them in a light most favorable to Plaintiff, Galaxy has plausibly alleged that its trade dress has acquired secondary meaning. The FAC provides sufficient facts about the length of time Galaxy has used its trade dress (at least since 2013), the nature and extent of marketing (in catalogs and flyers, on websites and in social media), the continuous and extensive effort Galaxy has made to promote a connection in the consumer's mind between its trade dress and Galaxy's business, and that the public has now come to identify Galaxy's trade dress with its products. Contrary to Defendants' argument, the Court finds these allegations are sufficient to show that Plaintiff's trade dress may have obtained secondary meaning prior to Defendants' use of the trade dress. See (Doc. #47, ¶¶ 18, 192.) Additionally, Plaintiff has alleged that Defendants intentionally copied Plaintiff's Trade Dress, (Doc. #47, ¶¶ 16, 88), and "proof of intentional copying is probative evidence as to secondary meaning issue." Vital Pharm., Inc., 472 F. Supp. 3d at 1259 (quoting Brooks Shoe Mfg. Co. v. Suave Shoe Corp., 716 F.2d 854, 860 (11th Cir. 1983)).

**(3) Non-functionality of Galaxy's Trade Dress**

Defendants argue that the FAC does not and cannot allege that Galaxy's trade dress is non-functional.[3] (Doc. #49, pp. 11-13.)

---

[3] Defendants have provided the Court with records from the U.S. Patent and Trademark Office as well as records related to

The Court, however, finds the FAC has sufficiently pled this element of trade dress infringement.

"Functional features are by definition those likely to be shared by different producers of the same product and therefore are unlikely to identify a particular producer." Dippin' Dots, Inc., 369 F.3d at 1203. "[A] product feature is functional . . . if it is essential to the use or purpose of the [product] or if it affects the cost or quality of the [product]." TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 24 (2001)(internal quotation marks omitted). Likewise, a functional feature "is one the exclusive use of which would put competitors at a significant non-reputation-related disadvantage." Dippin' Dots, Inc., 369 F.3d at 1203. "These features cannot be appropriated; otherwise, competitors would be prevented from duplicating the new product even to the extent permitted by the branches of the law of intellectual property that protect innovation rather than designations of source." Id. Functionality is considered with respect to the design in its entirety. Id.

Here, the FAC alleges that its trade dress - consisting of the strategic placement of a well-defined yellow and black stripe

---

U.S. Nuclear Regulatory Commission Regulation—10 C.F.R. § 34.35, and request the Court take judicial notice of such records. See (Doc. #49, p. 12, n.5; p. 15.) The Court will do so. See Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010)(stating that the court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment).

pattern, as well as the specific configuration of yellow, black, green and gray color features on its products - is non-functional. (Doc. #47, ¶ 14.) Specifically, the FAC alleges that Galaxy's trade dress is non-functional because it is not essential to the use and purpose of its attractions and amusement products, nor does the Galaxy trade dress affect the cost or quality of its products. (Id. at ¶¶ 14, 50.) The FAC asserts Galaxy's trade dress is a source identifier due to its unique, distinctive multi-colored design, which sets Galaxy's products apart from its competitors and creates a commercial impression in the minds of consumers, identifying Galaxy as the source of such products. (Id. at ¶¶ 14, 49.) In addition, the FAC alleges that Galaxy's trade dress does not serve a utilitarian function because it does place competitors at a non-reputational disadvantage. (Id. at ¶ 50.) Rather, The FAC asserts that endless alternative color combinations are available to competitors. (Id.)

Although Plaintiff's proof of these allegations may ultimately fail, such allegations are accepted as true in resolving Defendants' motion. The FAC has alleged a plausible claim based on non-functionality.

### (4) Likelihood of Confusion

"The touchstone test for a violation of § 43(a) is the likelihood of confusion resulting from the defendant's adoption of a trade dress similar to the plaintiff's." AmBrit, Inc. v. Kraft,

Inc., 812 F.2d 1531, 1538 (11th Cir. 1986)). Although "the likelihood of confusion is generally a question of fact," Garden Meadow, Inc. v. Smart Solar, Inc., 24 F. Supp. 3d 1201, 1212 (M.D. Fla. 2014), the Court may determine whether a likelihood of consumer confusion has been sufficiently alleged. See Yellowfin Yachts, Inc., 2015 U.S. Dist. LEXIS 149754, at *6-7. The Eleventh Circuit has identified seven factors when analyzing whether a likelihood of confusion exists between Defendants' and Plaintiff's trade dress:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

Savannah Coll. of Art & Design v. Sportswear, Inc., 983 F.3d 1273, 1280-81 (11th Cir. 2020). The court need not consider all factors in every case. See id. at 1281. While "the type of mark and the evidence of actual confusion are the most important" factor, Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc., 830 F.3d at 1255 (11th Cir. 2016), the court may "accord weight to the individual likelihood-of-confusion factors based on what the situation calls for and [need] not simply calculate the number of factors favoring such a conclusion and the number of factors

militating against it." <u>Savannah Coll. of Art & Design</u>, 983 F.3d at 1281.

The FAC addresses all factors and sufficiently alleges plausible facts to survive a motion to dismiss. With respect to the strength of Galaxy's trade dress, the FAC alleges that since at least 2013 Galaxy has extensively and continuously used its trade dress to promote, market, exhibit, offer for sale and sell its products in the United States, including Florida. (Doc. #47, ¶¶ 8, 14.) This is alleged to have resulted in brand recognition among consumers in the attractions and amusement industry, since Galaxy is the sole source of origin of products bearing the unique and specific color combinations, shapes, patterns, and design that make up its trade dress. (<u>Id.</u> at ¶¶ 14-15, 48.) Such allegations support a plausible likelihood of confusion.

As to the similarity between Galaxy's trade dress and Defendants' infringing trade dress, the FAC asserts Defendants have copied its trade dress, including the same color combinations and placement of the same, or have used confusingly similar color configurations, style and design. (<u>Id.</u> at ¶¶ 109, 114.) Plaintiff has provided several side-by-side images, one of Galaxy's trade dress and one of Defendants' infringing product. (<u>Id.</u>) The images portray similar colors and patterns as shown below:




Galaxy's Toxic Twister®          EZ Inflatables' Dual Toxic Rush

(<u>Id.</u>, p. 36(Figures 16-17.)) Plaintiff's allegations and images are sufficient to support a claim of likelihood of confusion based on similarity between Galaxy's trade dress and Defendants' products.

With regard to the similarity of products and services, the FAC alleges that Defendants have misappropriated Galaxy's trade dress to incorporate it into inflatable attractions and amusement products—the same very products that Galaxy's produces, markets and sells in an effort to lure Galaxy's customers away. (Doc. #47, ¶ 16.) The FAC asserts that Defendants' willful and intentional trade dress infringement are currently causing and likely to cause customer confusion as to the source of origin of products. (<u>Id.</u> at ¶ 25.) The Court finds Plaintiff has adequately pled similarity of products and services such that consumer confusion is likely to result. <u>Playboy Enters., Inc. v. Frena</u>, 839 F. Supp. 1552, 1560

(M.D. Fla. 1993)("The greater the similarity between products and services, the greater the likelihood of confusion.").

The FAC also sets forth allegations that Galaxy and Defendants have similar sales outlets and customers, as well as advertising methods. In particular, the FAC asserts that Galaxy and Defendants not only sell their inflatable products to customers in the same attractions and amusement industry, but Defendants have copied Galaxy's marketing strategy and continue to sell and market their infringing inflatable products through similar trade shows like the IAAPA Expo, fully interactive websites, i.e., www.galaxymultirides.com and www.ezinflatables.com, social media websites (including Twitter, Facebook, InstaGram, and YouTube), catalogue distribution, and direct email promotions. (Doc. #47, ¶¶ 13, 21, 24, 61, 82, 84, 87, 109.) The FAC asserts that Defendants continued marketing and sales through these similar channels are likely to cause confusion in the minds of consumers as to the source of origin, affiliation, sponsorship, or connection of such products with Galaxy. (Id. at ¶¶ 86, 108.)

Under the Rule 12(b)(6) standard, Plaintiff has sufficiently alleged factual content that allows the court to draw the reasonable inference that confusion is likely to result due to similar sales outlets, customers and advertising methods. See Ambrit, Inc., 812 F.2d at 1538 ("Likelihood of confusion is more

probable if the products are sold through the same channels to the same purchasers.").

With regard to Defendants' intent, the FAC alleges that Defendants intentionally copied its trade dress without Galaxy's consent to market and sell its infringing products. (Doc. #47, ¶¶ 16, 88.) Despite putting Defendants on notice during a 2018 IAAPA Expo, that Defendants were infringing on Galaxy's trademarks and trade dress, the FAC asserts that Defendants have acted in bad faith by continuing willfully and maliciously to use Galaxy's trade dress for its own financial benefit. (Id. at ¶¶ 19-21, 88.) Plaintiff alleges that Defendants actions have been with the intent to confuse, mislead, and deceive consumers as the true source of Defendant's products, and to falsely advertise or suggest to consumers that its infringing products are associated with or identical to Galaxy's products. (Id. at ¶ 117.) Galaxy has plausibly alleged Defendants' bad faith intent to misappropriate the proprietor's good will. See Marco's Franchising, LLC v. Marco's Italian Express, Inc., No. 8:06-cv-00670-T-17-TGW, 2007 U.S. Dist. LEXIS 49211, at *26 (M.D. Fla. July 9, 2007) ("A finding of malicious intent on the part of the defendant will . . . incline a court to find a likelihood of confusion.").

Finally, the FAC alleges that "Defendants' willful, intentional, systematic, and unlawful activities have in the past, [and] are currently causing . . . consumer confusion regarding the

quality and source of origin" bearing Galaxy's trade dress. (Doc. #47, ¶ 25.) The FAC also asserts that Defendants' marketing, promotion and sales of infringing products to the consuming public in the State of Florida, has already resulted in actual confusion and false belief in the minds of the consumers that there is a connection between Defendants' products and Galaxy. (Id. at ¶ 115.) "Evidence of confusion by actual or potential customers is, of course, the best evidence of a likelihood of confusion." FIU Bd. of Trs. v. Fla. Nat'l Univ., Inc., 830 F.3d 1242, 1264 (11th Cir. 2016).

Upon consideration of the seven factors, the Court finds the allegations in the FAC are sufficient to plausibly demonstrate that Defendants' use of Galaxy's trade dress is likely to cause confusion among customers or consumers. Plaintiff has sufficiently pled a plausible claim for trade dress infringement.

The Court denies Defendants' Motion to Dismiss Count VI—trade dress infringement under § 1125(a) and Count VII-Florida common law trade dress infringement.

**B. Count VIII**

Defendants challenge Count VIII of the FAC, which alleges that Abraamyan is engaging in contributory or vicarious unfair competition in violation of Section 1125(a) of the Act. (Doc. #49, p. 1.) Defendant's only argument is that this claim should be dismissed for the same reasons dismissal of Counts VI and VII are

warranted. (Id., p. 5, n.1.)  Because the Court has already found that the FAC is sufficient as to those counts, the Court finds that dismissal of Count VIII is not warranted.  This portion of Defendant's motion is therefore denied.

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Dismiss Counts VI, VII, and VIII Against Defendants For Failure To State A Claim and To Dismiss All Claims Against Edgar Abraamyan For Lack of Personal Jurisdiction (Doc. #49) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __12th__ day of May, 2021.


JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE



Copies:
Counsel of record